Hi, I'm Mr. Klausner. Good morning, Your Honor. Gary Klausner, step-in commissioner in GLAAD. Our firm represents Valley Health System. We refer to it sometimes as the district. We are the appellant. With me this morning is Mark Atwood from Jackson-Lewis. Mr. Atwood represents some of the other appellants in this case. I anticipate that I'll be doing the arguing, and I would like to reserve some time for rebuttal. All right. Your Honors, every case, in my view, sort of can be divided into two sort of major subcategories. You can look at the sort of technical side, which would be the statutes, the rules, and the practices. And you can also look at the sort of equities and policies. In this case, both of the technical side and the equities weigh in favor of reversing the bankruptcy appellate panel and finding that the bankruptcy court in this case had subject matter jurisdiction to take control of the state court action that had been removed to the bankruptcy court and ultimately dismissed by the bankruptcy court. This case involves the bankruptcy court's jurisdiction to protect the debtor, to interpret and enforce its own orders, and to prevent the illegal attempt to circumvent a confirmed plan under which the plaintiff's claims that were asserted in state court had been discharged, and in connection with which the bankruptcy court had not only entered an order discharging their claims, but had also entered an injunction prohibiting these very claims from being asserted in any form other than the bankruptcy court. Indeed, these plaintiffs, having been well aware of the bankruptcy case and having been given notice of the bankruptcy and every opportunity to assert claims in the bankruptcy case, which they were entitled to do, had chosen to ignore the bankruptcy. And then after the bankruptcy was concluded with a confirmed plan which discharged their claims, they brought suit in the state court seeking the adjudication of claims, the recovery of millions of dollars against the district, and other relief, which would have impacted dramatically and adversely on the confirmed plan that the bankruptcy court had entered after two and a half years of proceedings in the bankruptcy court. All right. So at the time that the state court complaint was filed, the plan in this case had not been administered? The plan had been confirmed. Confirmed, right. By entry of an order in April of 2010. The plan went effective in October. You are correct that this lawsuit was filed during a gap between the entry of the confirmation order, which was an effective order, and the plan itself going effective, which took place in October. Where does the record say the plan became effective in October? It's part of Judge Carroll's findings, which are. The BAP findings?  Was Judge Carroll also the underlying bankruptcy? Yes. Peter Carroll. There isn't any dispute about the timeline. Okay. My question is, though, so there's some suggestion in your briefs that this case should be distinguished from Ray on the basis of the fact that the plan, although confirmed, had not been administered. No. Well, I don't think that's an argument. And administered with respect isn't quite the right term. But the bankruptcy court in April entered a confirmation order. The confirmation order and the plan itself were dependent upon a closing of a sale of the debtor's principal assets. That transaction closed in October, and then as a result of that sale closing, the plan became effective. Now, that's the term of the effective date of the plan. This lawsuit was filed in August. However, the plaintiffs didn't have any right to file that lawsuit in August because their claims were then subject to the automatic stay. That automatic stay was effective upon the commencement of the debtor's bankruptcy case. And when does the automatic stay expire? The automatic stay expired when the plan went effective. Okay. So at all times, the debtor was protected either by the automatic stay prior to the effective date or by the discharge and the injunction. Which became effective as of the effective date of the plan. So there's no question that this lawsuit was a rogue lawsuit filed by pre-petition creditors, and this is all as found by Judge Carroll, whose claims had been subject to the stay, subject to the bar date which Judge Carroll had entered, and were subject to a discharge and an injunction. So when that case was filed, we removed it into the bankruptcy court and we asked Judge Carroll to dismiss it. Judge Carroll conducted proceedings on the motion to dismiss. Indeed, the plaintiffs didn't respond to the motion to dismiss, nor did they seek to remand the case at any time. Nevertheless, Judge Carroll dealt with the merits of the dismissal. And Judge Carroll concluded that the discharge of the claims barred the plaintiffs from proceeding against the debtor. He concluded that the lawsuit failed to state a claim against the trustees of this plan. He concluded that the lawsuit failed to state a claim against MetLife. And he also concluded that the plan itself wasn't even suable, if that's a word. It's not a separate entity. The plaintiffs took this case to the bankruptcy appellate panel, and the bankruptcy appellate panel dealt only with the issue of bankruptcy court jurisdiction. And the bankruptcy appellate panel incorrectly concluded that the bankruptcy court did not have jurisdiction over the removed case. And indeed, Your Honor, since the bankruptcy appellate panel's decision, this court has rendered its decision in a case called Wilshire Courtyard, which we provided to the court by way of a supplemental letter. And we've read it. And my question for you on that is, how do you reconcile Ray and Wilshire Courtyard? On their facts. I mean, I think that they are both correct, but they are factually distinguishable. Okay. Well, what are the facts that make a meaningful distinction? In Ray, you had a lawsuit filed in state court by parties who were not the debtor. They were arguing over a right of first refusal in connection with a sale transaction that had been approved by the court years earlier. Neither party sought to bring that case to the bankruptcy court, actually. It was the state court judge who referred it to the bankruptcy court because he felt that the bankruptcy court should interpret its own order relating to the sale transaction, which the court did. And it went up on appeal to the Ninth Circuit. The Ninth Circuit, applying the standard which was set forth in the Ninth Circuit's case we call Pegasus, the Ninth Circuit concluded that that lawsuit was not subject to the bankruptcy court jurisdiction because it had nothing to do with the bankruptcy. It didn't involve bankruptcy claims. It didn't involve the plan. It had no impact on creditors. It had no impact on distributions. It was simply a dispute by two parties, the outcome of which had very little, had nothing to do with the plan or the distribution under the plan. Now. So the debtor wasn't being sued? I'm sorry? In that case, the debtor wasn't being sued? I don't know if the debtor was technically a party. It may have been a necessary party, but the debtor had no interest in it. The suit was between two parties arguing over this right of first refusal. So it was a breach of contract? Yes, exactly. It was a breach of contract claim arising under state law. So what the Ninth Circuit said in Ray was it just had no, if you look at the standard, it had nothing to do with the implementation of the plan, the administration of the plan, the execution of the plan. I think the court could have found in Ray that the bankruptcy court had some ancillary authority because there was the need to interpret its order. But the Ninth Circuit in Ray said that that really was something that a state court could do, especially in a case in which there were no interests of the bankruptcy estate involved. You turn to Wilshire Courtyard, which is the more recent case. This was an interesting outcome in light of what was involved. You had a confirmed plan. And in connection with the confirmed plan, there was a restructuring of a real estate partnership. The principals of the partnership, the partners, took the position that the plan effectuated certain tax consequences. They claimed that they had what was called cancellation of indebtedness income, so they reported cancellation of indebtedness income. Years later, the California Franchise Tax Board took the position that these partners actually had capital gains. So the difference between treating this transaction as creating capital gains versus cancellation of debt was meaningful. Lots of money was involved. So the California Franchise Tax Board started litigation in front of the state tax board. The partners sought to reopen the bankruptcy case, and they asked the bankruptcy judge to rule on this issue, because in their view, this was related to the plan. The entire plan was predicated on a restructuring transaction that was supposed to have had certain tax consequences. The bankruptcy court reopened the case and actually granted summary judgment in favor of the partners. This case went up to the Bankruptcy Appellate Panel. The Bankruptcy Appellate Panel, and this is, I think, following Ray, so I think the Bankruptcy Appellate Panel... I'm not talking about our case. No, no, talk about the... I mean, you know, this is complicated, this whole... Can I simplify it for you? ...presentation, you know, and... So what is it you're trying to tell us? No, it's all right. Yeah, I know. Yeah. Let me ask you this. Did your clients... You're representing the plan? It's the debtor. That's the debtor. You represent Valley Health Systems, the debtor? Yes. Okay. And... All right, we're considering this mandamus petition. So the mandamus petition is the name of this lawsuit that was filed in state court. The petitioners who petitioned for mandamus in state court are creditors of Valley Health System, and they sought, by virtue of this petition in state court, they sought to adjudicate and enforce claims against Valley Health System, notwithstanding that Valley Health System had gone through a bankruptcy proceeding and had discharged those claims. Let me ask you a few questions. Now, this is not a case under Title XI, is it? Yes, it is, Your Honor. Huh? Yes, it is. Title XI is the bankruptcy code. It's divided into a number of chapters.     Chapter 9. Chapter 9. Chapter 9. Chapter 9. Chapter 9. Chapter 9. Which is a chapter of the bankruptcy code that is... Well, does Title XI apply to mandamus petitions? The mandamus... Well, that's what we're dealing with here. Yeah. The mandamus petition, which was filed in state court... Yeah. ...was a lawsuit to enforce claims against the debtor. Claims against the... It was a petition filed by former employees of the debtor. Huh? Yes. To enforce claims against the debtor. Yeah. And it was filed in state court. Improperly. I just asked you a question. Yes. It was filed in state court. That's correct. And we removed it. And you removed it. Yes. What was the basis of removal of jurisdiction? It's in 28 U.S.C. Section 1444. We're entitled... Under 28 U.S.C., a debtor has the right to remove into the bankruptcy court any civil proceeding filed either before or during the bankruptcy case. Let me go through these, you know, because this is a very difficult case for me to figure out. Because I really, I don't think we got the help that we should have had, you know. Just a lot of words, trying to figure it out. We don't get too many of these cases, but I've had a little experience in this. And I've worked out charts, and I've tried my best to figure it out. All right. So, is this a core proceeding? Yes. Okay. Is it a core proceeding that arises under the bankruptcy code or in a case under the code? Do we have that here? It's related to a case under the bankruptcy code. That's one of the bases for jurisdiction. Well, that's another basis for jurisdiction. I'm just taking these one by one, trying to figure it out. You've got certain bases for jurisdiction. Core proceedings related to an ancillary jurisdiction. I'm taking them one by one. You know, I can't jump around. You've been doing this all your life. Huh? Maybe you dream about it. But it was not easy to figure this thing out because of the jumbling. All right. So, is this a core proceeding? Yes. It is? Yes, sir. Tell me why it's, then why did you have to go to related to? In the alternative. The issue is. Tell me why it's a core proceeding. Because it involves the adjudication of claims, which are core matters. It involves the plan of the. Well, doesn't this mandamus petition that we're dealing with allege violations of state law? Yes, Your Honor. Okay. And those claims. And those state law claims, by their nature, don't arise only in the context of a bankruptcy case. Is that right? That's right. So how do we get core jurisdiction? Most claims. I don't see where there's core jurisdiction. Can you be a little specific? Because what exactly is the claim that the Curtin parties are making in the petition? That the Valley Health System maintained a retirement plan. Yeah. The plaintiffs, who are former employees, contended that Valley Health System did not fund the plan. Yeah, that's happened all over the country. Because the Supreme Court reversed one of my cases. Go ahead. So they are alleging that Valley Health System owes them money. Yeah. Okay. $100 million. Correct. Yeah. Most claims in bankruptcy cases aren't based on bankruptcy law. They're based on state law or federal law. They could be based on tort. They could be based on contract. They could be based on federal statutes. Bankruptcy cases deal with. Okay. Let me ask you. The case that arises and the type of situation we have here. Was there a time when these folks could have filed a claim in the bankruptcy proceedings? That's what they should have done. Huh? Yes. Did they do it on time? No. Okay. So they didn't do it on time, so they went to the state court. Yes. In the meantime, you had a plan that was approved. Right? Correct. So they've gone through all this work. And then you show up with your client who's got a $100 million claim. And I think all it was, as far as I could tell, the assets were what, $21 million? Approximately. And they've been working here for a while. And all of a sudden, your client knocks on the door. That's not my client. That's Mr. Wall's client. Well, you know, when you talk to me, I can't tell who your client is. I represent the debtor. I know that. Yeah. Well, we didn't make these claims. The claims were served against the debtor. We brought them into the bankruptcy court so the bankruptcy court could evaluate them. And the bankruptcy court concluded that they were brought improperly because they were late, they were barred by the bar gate, and they'd been discharged. And what did the appellate panel say? They said that the bankruptcy court didn't have jurisdiction to make that decision. Uh-huh. And they based their decision, in part, on a case called Wilshire Courtyard, which was a bankruptcy appellate panel. Did the appellate panel? Go ahead. They based their decision primarily on two cases. One case was a bankruptcy appellate panel case. That's Wilshire Courtyard. Which has now been reversed by the Ninth Circuit. Right. Okay. So this bankruptcy panel did not have the benefit of our decision in Wilshire Courtyard. Right? The BAP. Yes. Did not have the benefit of our most recent decision. Okay. Right. We submitted that. Wilshire Courtyard came down this summer after our briefs were in. So Wilshire Courtyard was a Ninth Circuit decision, which articulated a standard for bankruptcy court jurisdiction over this type of matter. And what Wilshire Courtyard said, what the Ninth Circuit said in Wilshire Courtyard, was that if a matter, which would be this mandamus petition, that we moved into the bankruptcy court, that if a matter affects the implementation of a plan. The standard is it has to have a demonstrative effect on those things. So what you should tell us is what demonstrative effect the state court proceedings could have on the plan confirmation and injunction, discharge and injunction. The assertion of $100 million of claims. Well, it has a demonstrative effect because? Because it would interfere with, indeed, completely undermine the distribution to creditors under the plan. Okay. It would be hard to imagine anything that would have a greater impact. Don't speak in generalities and ambiguities. What exactly, if the Curtin plaintiffs prevailed in the state court action, what exactly would happen to what had been done by the bankruptcy court when it confirmed the plan and discharged the debtor and entered its injunction? It would have prevented the debtor from making distributions to creditors under the plan that the court had approved. It would have imposed a judgment against the debtor on a claim that had been discharged. So it would interfere with, indeed, prevent distributions to creditors under the court-approved plan. Okay. Yeah, so you're kind of coming in and throwing a monkey wrench into the plan. They were coming in to throw a monkey wrench. We're trying to protect the plan. Where is the claim discharged? Where in the record does the bankruptcy judge say the claim that's at issue here has been discharged? I can show you in the record Judge Carroll's memorandum decision. It begins at page 117. It's in volume one of the excerpts. Judge Carroll entered a memorandum decision. Okay. They're asking for the discharge. So one of the things, so here's what Judge Carroll said. This is at the record at page 125 and 126. Here's what Judge Carroll wrote. On April 26, 2010, an order was entered confirming VHS's Chapter 9 plan of adjustment. VHS's confirmed plan treated allowed claims of VHS retirement plan participants in Class 2. Where are you reading from now? Well, I'm actually reading from a brief. It would be easier to find that passage in a brief or in the actual team record. Because I can give you, it's page 126 of the record, and it's on page 17, Your Honor, of our opening brief. What case are you talking about now? When we brought this case before Judge Carroll, he granted our motion to dismiss this mandamus matter that had been removed to him. Following his dismissal, the petitioners moved for reconsideration. Yeah. Judge Carroll then wrote a 14-page memorandum decision denying reconsideration. In doing so, in his written decision denying reconsideration and explaining why these claims were discharged, he said, that's the passage I'm reading from. So this is Judge Carroll, the trial court's memorandum decision explaining why he was denying reconsideration of his order dismissing the case. That's the $100 million claim? Yes. Okay. Then what did the BAP do? So the BAP looked at the issue of Judge Carroll's jurisdiction. And they concluded that he did not have jurisdiction. Yeah. They took a very narrow reading of the concept of related to jurisdiction when you were going through your... Yeah, right, right, right. One of the basis of jurisdiction is that a matter is related to a bankruptcy case. The Ninth Circuit in Pegasus and in Wilshire Courtyard and indeed in Ray have all said the same thing about what is related to. A case is related to, a matter is related to a bankruptcy case if there is a close nexus. That's the term of art. They then defined close nexus as meaning that this matter would have an impact or an effect, literally that's the language they use, it would have an effect on the implementation, execution, administration, interpretation. Consolation. Right. Yeah. So within the boundaries of that definition there isn't any doubt that this lawsuit had a close nexus to the bankruptcy case. It sought to adjudicate claims against the debtor which had been discharged in the bankruptcy case. And there's a whole history of bankruptcy law that says that the bankruptcy court has the authority to interpret its own orders, to protect and enforce the discharge. Clearly this was related to the bankruptcy case. It was an assertion of claims against the debtor. There's almost nothing more significant in a bankruptcy case than two things. One, the administration of claims, and two, the implementation of a discharge. When I asked you about where in the record does Judge Carroll say the claims are discharged, you were, I thought, explaining that he did it in his reconsideration ruling which concerned the dismissal motion. Did he not do it before then, before the reconsideration ruling? No, no. He did it when he granted the dismissal motion itself. He didn't he do it on April 26, 2010? He confirmed the plan and discharged it in order? When he confirmed the plan and he ended the discharge in April 2010, he was entering in order generally discharging debts. Right. And so I think, see, I tend to agree with Judge Person. I think you're making this thing more confusing than it is. I'm sorry. It really is not that confusing. Just do it in chronological order. It's not confusing at all. Okay. Let me try again. You're 14 minutes and a half over. Let me ask you something. Yes. You know, do you ever diagram these cases? Yes. Do you ever present those diagrams to the courts? Sometimes, yes. Well, the great lawyers do that when they've got a complicated case. So we don't have to sit down and spend days and days and days and days trying to figure this stuff out. They lay it out for us. I think in his life. Just like Attorney Frank used to do with Phoenix. Do you remember him? No. You'd better look him up. He's gone. But he used to have these things laid out for you. I appreciate that, Your Honor. And I apologize if I have made this more confusing. No, no. I actually don't view it as that complicated either. I spent hours and hours and hours trying to figure this out. It's not the most exciting subject in the world either. It is to me. But I understand that you don't. And you have every other matter to deal with. I would mention that. We have 30 tough appeals this week. I know. Just one of them. A couple of them. I would just say in our reply brief at page 3, we attempt to simplify the timeline. And we go through the timeline. Why did you do that in the opening brief? We did it also. There really isn't any controversy here about. I've made up my own chart. I've got it on one page. That's what I'm looking at. I would like to reserve a couple of minutes, but I also want to be able to answer. You have no minutes to preserve. You have 16 and a half minutes of your time. Are there any other questions? All right. Let's hear from whoever is here. Thank you. May it please the court. Bill Wall for appellees. At the outset, I'd like to apologize for my colleague, Mr. Peterson, being unable to attend. He was primarily the lawyer below. He was unable to attend because of medical reasons. That's all right. I just wanted to make sure I passed that along. So you represent whom? I represent the plaintiffs below, Ms. Kirtland and Ms. Agnello. They were nurses for Valley Health System. Yeah, yeah, yeah. What do they want? What they want is to go forward in state court and let the state court decide if they are entitled to the pension, which was promised to them by the district. Okay, so weren't those very claims at issue in the bankruptcy proceeding? They, first of all, to answer that directly, some of them were. Some of them were. Weren't they listed, weren't all the employees listed as creditors in the bankruptcy and weren't your clients in particular served notice of each of the aspects of the bankruptcy proceeding? I believe they were served notice of it. And what did they do when they got notice that their claims against the Valley Health System retirement plan were being adjudicated in the bankruptcy court? After they received claims, Your Honor. They received notice. They received the same notice as everybody else did. You're absolutely right. I apologize. They also received a disclosure statement which said their rights would not be impacted. I think if I could take a step back, one of the issues, because the BAP only addressed jurisdiction, that I think is important to bear in mind is if the court agrees with the appellants in this matter that jurisdiction was appropriate, I believe remand to the BAP for consideration of those other issues would be appropriate rather than a dismissal or blanking of funds. And why is that? Were there other issues appealed to the BAP that didn't reach to us because of the BAP's determination that there was no jurisdiction? That's absolutely correct, Your Honor. Okay. So what kinds of issues remain? Well, there was the really every issue in the complaint remains because we interpret the BAP's ruling as a remand. So the petition is a remand to state court for lack of jurisdiction. So all issues that were originally brought up in the petition for mandamus apply, whether there was a breach of fiduciary duty by MetLife. Yeah, but aren't you barred from bringing up those claims now since all the claims were discharged and subject to the injunction? For the sake of argument, I will say that if we are barred from bringing claims against the debtor, there's no law or fact which would bar claims from the individual defendants, MetLife, the planned administrator. And when I say, I'm sorry, this case is a bit confusing like a trust and estate case. Bankruptcy attorneys are always saying estate in different contexts. I don't know why your client, I mean, you'll have to explain to me satisfactorily why your clients did not assert any claims in the bankruptcy proceeding. They certainly couldn't have asserted claims against MetLife in the bankruptcy proceeding. They could not have asserted claims against the individual trustees for breach of a fiduciary duty. But they're asserting claims against the plan. They're saying the plan was underfunded. The retirement plan was underfunded, yes, Your Honor. But that is a claim against the plan, not a claim against the bankruptcy estate. Who was supposed to fund the plan? If the fiduciaries of the plan or the plan failed to monitor the district properly. So who were the fiduciaries of the plan? The individual defendants. How about the debtor, the Valley Health System? The Valley Health System's obligation was to fund the plan. The retirement plan, excuse me. Right. So if. . . If it didn't fund the plan, that should have been brought up in the bankruptcy proceeding. I agree with you, Your Honor. That's one claim for relief of the cause of action because it was a state court petition. That should have or could have been brought up in the bankruptcy proceeding. The ultimate. . . Well, that's where it should have gone. That's where one action could have gone, yes, was raising those claims. I still haven't heard a good answer as to why your clients received notice that their rights against the plan were being adjudicated in the bankruptcy court for the funding of the plan, and they didn't participate. Nor did they participate, by the way, in the removal process. The most direct answer I can give is I don't know. I was not the attorney below. Well, that's not an excuse. I understand, Your Honor. No. But I didn't want to sound evasive, and I guess I failed in that respect. But my point is that. . . I'm sorry. Going back to what I said before is let's say for purposes of argument that the claims against the district were discharged. That wouldn't discharge claims for a breach of fiduciary duty. Right. Okay. So let's say that. But the question that we're looking at is jurisdiction. And so and the BAP just said. . . The BAP basically in reliance on Wray and its own construction of Wray before we told them they were construing it too narrowly, just found there was no jurisdiction. But Judge Peter Carroll, who was the bankruptcy judge, ruled against you on all those claims already. And we appealed all those claims, and that's why I respectfully request that if the court disagrees with me on the jurisdiction argument, that a remand be made to the BAP so that those other arguments would be addressed. Do I. . . Let's see. Where on the record would I find your appeal of Judge Carroll's underlying decision? I'm sorry. If I could turn to another binder, I believe I have the exact reference. Okay. Great. Thank you. Our BAP opening brief was filed 5-25-2011. And I apologize. I don't have the exact reference to the record. But I don't believe any of that was disputed. None of those issues are in front of us right now. In a certain way, Your Honor, that's my point, which is those issues need to be addressed in front of someone, and those issues haven't been addressed because of the bankruptcy court's jurisdiction. . . Excuse me, the bankruptcy appellate. They were addressed by. . . You agree they were addressed by Judge Carroll. Absolutely. In his underlying. Absolutely. So the only thing left to be addressed now is the BAP addressing your other issues. Well, in the general jurisdiction argument. Assuming it's in your jurisdiction. I'm sorry. I was talking at the beginning. I'm sorry. Yeah. Assuming that we disagree with BAP and conclude that there was related to jurisdiction. That's certainly not an assumption. I'm happy to make, but that's absolutely the case, yes. Okay. All right. I'm just curious, and I guess I'll wait until you move. . . I'm wondering if the appellants agree that it has to be remanded to the BAP, if we find there is jurisdiction in bankruptcy courts. I could anticipate what they say, but that was something we raised in our brief, and I don't believe in the reply brief it was raised. So I would take that as a concession. Or in the reply brief, I don't believe there was an objection to that request, so I would take that as a concession. Those other issues need to be addressed. Let's say we determine that this is not a court proceedings, that there's no related to jurisdiction, and there's no ancillary jurisdiction, that the plan has been approved. Where does that leave your client? That leaves my client back in state court, where a state court judge can determine whether the promises made by the retirement plan have been kept. Or whether the whole proceeding is barred by the discharge in the bankruptcy court? Yes, and I think that's one of the overarching issues, is whether we can trust or count on the state courts to interpret bankruptcy court orders. Dovetailing with one of Judge Perguson's questions of can we have a chart, the chart can be a box. Can the state court interpret a bankruptcy court plan? How about the injunction part of the bankruptcy judge's order? Are you anticipating that the state court would interpret the scope of the injunction too? I don't believe there's any part of the confirmation order, including the injunction portions, which cannot be interpreted by the state court. But typically, doesn't a court that issues an injunction interpret it and enforce the injunction itself? I believe that depends on the procedural posture of the case, Your Honor. If, for example, I was coming to the bankruptcy court for a relief from state motion, which is in essence a challenge of the state injunction, then obviously that court would interpret its own order. Conversely, and these cases are cited in our brief, if one comes to a court and does not on the face of its pleadings raise those issues, that there's an injunction out there, if a party is to defensively raise those issues, that there's an injunction out there, then I believe we have to rely on the court to which the plaintiffs, as the master of their case, went. Isn't it? It seems odd to me that another court would interpret the injunction of a court because there's contempt issues. And so how would another court decide whether or not to hold a litigant in contempt of court in connection with the violation of the issuing court's injunction order? To break a cardinal rule, let me answer that question with a question, which is we have a court order that a state court judge is capable of reading and interpreting and an injunction saying the same. It's my understanding of the case law that the credence is to be given to the state court to make that determination. If contrary, the plaintiffs or any plaintiffs went to state court seeking to enforce the injunction of a bankruptcy court, then the bankruptcy court would have jurisdiction because from the face of the pleadings, that injunction is referenced. But defensively, for lack of a better word, if jurisdiction is a defense, then that needs to be applied by the state court. And there's no reason the state court isn't capable of reading a confirmation order and determining whether or not the action is enjoined. Well, your clients could have filed their claim while this reorganization was ongoing. Some of them did. Perhaps they could have filed the claim against the district. They could not have filed the claim against the retirement plan fiduciaries, fiduciaries in the broadest sense, which is either the retirement plan itself or all the fiduciaries of the retirement plan. There was no recourse for them within the bankruptcy court. Well, isn't what got you here is that you filed against the Valley Health System? Yes, that's correct. Yes, I mean, and I guess this dovetails with another one of my points, which is why one of the questions we've asked to be addressed is whether the right to amend or, excuse me, the denial of the request to amend and file a first amendment complaint was proper, because it's not unheard of for us to look at the ruling or review the briefs and say, absolutely, we should have dismissed the plan. I think your clients have just totally tried to circumvent the bankruptcy process, and I don't see how we can countenance that, given the bankruptcy proceedings and system that we have enacted by Congress in this country. I just don't see how claimants can just not respond to notices and avoid participation in the bankruptcy until the whole thing's all over with and then come in into state court and try to go after the same pot of money that was just ordered that it be distributed in a particular way. Well, I have a couple answers to that. Well, that's what you're trying to do, isn't it? That is one of the things we are trying. That's the big one. I'm extremely uncomfortable saying that we are trying to circumvent the bankruptcy process. With that said, one of the things we are attempting to do is... I mean, you could have brought it. You could have brought the matter in the bankruptcy court, but you didn't do that. And so now you want to go directly against the trustees and some of these other people involved. Respectfully, Your Honor, reading the BAPS decision, we could not have brought this in the bankruptcy court because there was no jurisdiction. Right, but if we were to find that the BAPS was wrong because it was relying on its own decision in Wilshire, which then we reversed, right? So then your clients could have done that, right? That's correct, Your Honor. And since Your Honor mentioned Wilshire Courtyard, there was a point I wasn't able to address in my brief, as that was a new matter of decision handed down after a brief. And that is, briefly, Wilshire found of the three types of jurisdiction Judge Preterson was referring to, that only one existed. And I think that's important to note, that the Ninth Circuit affirmed on the other two. The one that it found existed was related to jurisdiction. I believe the facts differentiate in that case. And I think, to summarize, I'm sorry, it looks like the clock is counting up. I don't know if I'm, is that how much time I've gone over? No, it means, yeah, how much you've gone over. Oh, I apologize. But you can finish your thought. Certainly let the other side go over. Thank you very kindly, Your Honor. I'd really like to start with what Mr. Klausner said, which is there's, I agree with his premise, but not his conclusion. That is, there's two subcategories of most cases, the technical side and the equitable side. I think as a court of equity... Well, there are good cases and there are bad cases. I agree, yes. As a court of equity, I think a bankruptcy court should be required to look at the totality of what we're dealing with here, is what could have potentially been a class of district workers who will now not be receiving a pension. The other thing is there has been an overarching issue, is there are many, many facts not in the record, which we couldn't have placed in the record because we weren't given the right to amend. Well, if there's no jurisdiction for the bankruptcy court and your clients miss the boat, how could there be then any liability on the part of the debtor towards your clients? And that was something I was referring to before, is that if that is the court's conclusion, it introduces kind of an interesting circumstance where if the debtor is dismissed from the case, then undoubtedly there's no jurisdiction over the other defendants. So if the court disagrees with our position that there's no jurisdiction over the debtor, there's certainly no grounds for jurisdiction over the other defendants once the debtor is dismissed. Say that again. I was feeling that a chart would help on that one. If the bankruptcy court has jurisdiction over the debtor, if we agree that the court finds that the bankruptcy court, based on Wilshire, has jurisdiction over the debtor, once the debtor is dismissed, there is no grounds for jurisdiction over any of the other defendants or the plaintiffs for that matter. How about supplemental jurisdiction? I don't. I would need to look at my notes again, but I think, one, that would have to be raised by the other defendants. Number two, that is a question that could be left to the state court. And the – I'm sorry, you're nodding your head. Yes, I'm not sure that my question was clear. If the bankruptcy court has related to jurisdiction over the debtor, then wouldn't the bankruptcy court have supplemental jurisdiction over the other parties? Not if the debtor is dismissed, Your Honor. That's my understanding of jurisdiction. If the debtor was dismissed, then the other – there would be no bankruptcy for the other parties to be related to. Well, doesn't a Federal court have discretion as to whether it decides to continue exercising supplemental jurisdiction once it has it? It still must have subject matter jurisdiction. That's my understanding. Okay. I'm sorry, I wasn't exactly prepared for that question. And, obviously, I've been greeting with my time. I'm happy to answer any questions. Once the plan is confirmed, does the debtor then cut loose? I think that depends on the terms of the plan. In this particular case, I would say it does. My recollection of this plan of readjustment is that the debtor is cut loose or discharged for lack of a better word. My understanding is that the debtor right now is essentially a collection agent for the installment sale of its assets. And then the debtor would be free of your $100 million claim? The debtor might be. The fiduciaries of the plan that had a duty to my client. Let me just ask you about the debtor. I'm sorry. Yes, Your Honor. The answer is yes. Yes, Your Honor. The answer is yes. If the court had jurisdiction to enter that plan, yes. Anything else you want to add? Just I appreciate the court's time for the matter. I'm obviously happy to answer any other questions. It's been a great pleasure having you here. Thank you, Your Honor. And hopefully I'll bring a charge. Excuse me. Does the court want me to respond to that one? I do. I just, you know, just so. Yes, sir. Am I missing something? So, okay, so counsel for the Curtin parties asked that if we do find that the bankruptcy court had jurisdiction, that we then remand the matter to the BAP for consideration of the remaining issues on appeal. Do you agree with that procedurally? I think the court has in front of it a record from which this court could rule on the underlying motion to dismiss that we filed in the bankruptcy court. The bankruptcy appellate. But why do we want to go all through that record? You don't have to. You could and you may choose not to. Indeed. But, I mean, do you disagree that remand would be the appropriate procedural if we were to find that the court does have jurisdiction, the BAP's ruling was wrong in light of the subsequent Wilshire construction? Indeed, in Wilshire Courtyard, that's exactly what you did. You remanded it back to the BAP to deal with the issues that the BAP had sidestepped because it dealt with jurisdiction. So you certainly have precedent for sending a case back to the bankruptcy appellate panel so that they can deal with the merits of Judge Carroll's ruling. The bankruptcy appellate panel, in our case, never addressed the merits. They only addressed the procedure. Well, do you have a problem with that? I don't have a problem. That's the question. I don't have a problem. Do you object or not? This is a yes or no. Okay, let's try it. Yes or no. Do you have a problem with that? The issue is judicial economy. So I would prefer that this court resolve it. Don't worry about economy. Economy is going to hell anyway. I can't say we have an objection. It's just that once they resolve it, we could end up back here. What did you say? I said I don't have an objection to this going back to the bankruptcy appellate panel. However, from a standpoint of economy, we may end up back here after the bankruptcy appellate panel makes a final decision. Well, that's life, huh? It's what you want us to do. You know, like I visited the high court in England, and the judges would come out and say, what can we do for you today? So what would you like us to do? I'm just curious. Yeah. We think it's important that that decision in this case be reversed. We think that they made a mistake on jurisdiction, both in terms of the law, as it's been clarified by Wilshire Courtyard, but also in terms of policy. We think it would be a huge mistake to invite creditors to go into state court after confirmation of a plan to force debtors to then litigate in state court and have a variety of state courts try to determine and interpret a bankruptcy court order. The bankruptcy court should have the authority to do that. That's what the Supreme Court said in Travelers. And indeed, even in Wilshire Courtyard, this court, the Ninth Circuit, referred to the Supreme Court's decision in Travelers and supported its decision by virtue of the ancillary jurisdiction that the trial court had to interpret and enforce its own orders. So from our standpoint, the most important thing that this court could do is to unring the bell that the BAT rang in the lower court decision, establish clearly that the bankruptcy court had the jurisdiction to enforce the discharge and to take control of a rogue lawsuit that was filed in violation of its own injunction. Once that happens, we're prepared to deal with the merits in front of the BAT, as we did in front of Judge Carroll, who, by the way, made a very thorough analysis of the merits of all of the petitioner's contentions, and we're fully prepared to defend Judge Carroll's decision if we have to go back to the Bankruptcy Appellate Panel. And the mistake of the panel, again, was what? They really read too narrowly the concept of related to jurisdiction. They seemed to focus on the fact that the petition in state court asserted state law-driven causes of action. That's true of every claim in a bankruptcy case. There's nothing unusual about state court claims being or state court causes of action being the basis for claims in a bankruptcy. So their position was let the state court interpret the bankruptcy court order, let the state court determine if there's preclusive effect. And as we pointed out in our brief, in McGann, this court, the Ninth Circuit case we cite in our brief, said it was actually an abuse of discretion for a bankruptcy court to defer to a state court on issues of discharge, that those are exclusively within the court jurisdiction of the bankruptcy court. So the BAP was wrong in stating that the state court should evaluate the confirmation order and determine whether it had preclusive effect. That that was an incorrect holding on their part. The bankruptcy court should be doing that. Indeed, the BAP said that recognizing that this lawsuit was harmful to the debtor, said that if the state court gets it wrong on the issue of preclusion, well then the debtor might be able to go into the bankruptcy court, which we thought was kind of a bizarre way of evaluating this. Essentially saying the bankruptcy court should defer to the state court in the first instance, which is contrary to this court's ruling in McGann. But then opening the door to suggesting that the bankruptcy court would have jurisdiction after the BAP incorrectly rules on the preclusion issue. So the BAP was wrong both interpreting case law, applying the applicable code sections, but clearly wrong on a matter of fundamental policy. The bankruptcy court had core jurisdiction, it had ancillary jurisdiction, and it had related to jurisdiction. And this is entirely consistent with Wilshire Courtyard. All right. Thank you, Your Honor. Thank you. Appreciate it. Why don't you step around for a while? Thank you. Yeah. Thank you. Yeah, we're adjourned, but stay here.
judges: Burrell, Pregerson, Wardlaw